16 N.J. Super. 163 (1951)
83 A.2d 900
JAMES FARRELL, PLAINTIFF-RESPONDENT,
v.
DIAMOND ALKALI COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1951.
Decided November 2, 1951.
*165 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Harry E. Walburg argued the cause for the appellant (Messrs. Cox and Walburg, attorneys).
Mr. Herman M. Wilson argued the cause for the respondent (Mr. Morris Edelstein, attorney).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal by the defendant from a judgment entered in the Law Division pursuant to a verdict by the jury in favor of the plaintiff.
The defendant's plant at Kearny had been used in the manufacture of chrome. It was not in operation, was in a state of disrepair, and its interior and contents were covered with chrome dust. The defendant was repairing its plant and engaged the Frank P. Farrell Company as an independent contractor to install certain plumbing, heating and process piping. The plaintiff, a steam fitter, was employed by the Frank P. Farrell Company and worked at the defendant's premises from July to October, 1949. He spent most of this time at the plant where he repeatedly came in contact with *166 the dust and contracted chrome dermatitis. He received medical treatment and later filed his complaint in the Law Division charging that his injuries resulted from the defendant's negligence. After trial the jury returned a verdict for the plaintiff in the sum of $2,000; on the defendant's motion to set it aside as excessive, and with the plaintiff's consent, it was reduced to $1,000; the defendant has duly appealed from the ensuing judgment.
The defendant's knowledge that the chrome dust constituted a hazard to persons working in the plant is not disputed. Its contract with the Frank P. Farrell Company contained a provision that the "Contractor shall, during the progress of the work, cause approved safeguards to be used by all of its employees to avoid concomitant occupational hazards associated with bichromate and chromate manufacture." And its witnesses testified that they specifically advised the contractor as to the need and use of masks, rubber gloves and other precautions for protection against chrome exposure. Admittedly, the defendant did not deal directly with the contractor's numerous individual employees or furnish them directly with any precautionary devices or instructions. Representatives of the contractor testified that precautionary devices and instructions were furnished by the contractor but the testimony on the plaintiff's behalf was to the contrary and the jury evidently accepted his version as hereinafter set forth.
The plaintiff was hired through his union hall and received no instructions other than to report at the plant. When he arrived he was not furnished with any mask, rubber gloves or other protective materials, received no precautionary instructions, and never saw any of his co-employees wearing masks or rubber gloves. There was a gray dust, which he could not then identify, throughout the plant and there were no blowers, exhaust fans or ventilators. After he had worked about two weeks his hands became itchy and he noticed little red spots. The nurse employed by the defendant at its premises told him that it was prickly heat and applied calomine lotion; she made no mention of the danger of *167 chrome dermatitis and the need for precautions. His discomforts spread and he again visited the nurse who told him that he ought to see Dr. Mears, his employer's company doctor. He was treated by Dr. Mears but there was no discussion as to the conditions of his employment. He continued work until October 2 and shortly thereafter visited Dr. Braitman who gave him further treatments.
During the trial the plaintiff called two other employees to testify on his behalf. Emil Hanclek stated that he was employed by the Frank P. Farrell Company in August, 1949, and, above objection, was permitted to testify that he received no precautionary instructions and suffered a chrome rash. Similarly, Howard Paul Kerr was permitted to testify that he received no precautionary instructions and suffered a chrome infection. At the close of the case the defendant moved for the entry of judgment contending that it was not negligent and that the plaintiff was guilty of contributory negligence and had assumed the risk of injury. This motion was denied and the matter was submitted to the jury. In support of its appeal the defendant urges primarily that the lower court erred in denying its motion for the entry of judgment and in its evidential rulings.
Our courts have repeatedly stated that employees of an independent contractor engaged to work at the owner's premises are invitees and the owner is under a duty to use ordinary care to see that the place in which their work is to be performed is reasonably safe. Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83, 86 (E. & A. 1933); Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 275 (E. & A. 1947). In the instant matter the defendant was aware of the nature of the hazard which the dust created at its premises; on the other hand, invitees, although they could observe the dust, would ordinarily be unaware of its identity and latent danger unless properly cautioned. Under these circumstances, the defendant was under a duty to take proper steps for the protection of its invitees against chrome exposure. Sutton v. Lerner Stores Corp., 10 N.J. Misc. 1126 *168 (Sup. Ct. 1932); Santamaria v. Lamport & Holt Line, Ltd., 119 N.J.L. 467 (E. & A. 1938); Kappertz v. R.B. McEwan & Son, 106 N.J.L. 484 (E. & A. 1930). The defendant contends that it took such steps and discharged its duty of care when it advised the contractor of the hazard and the latter undertook contractually to provide the necessary safeguards. Although recent decisions elsewhere may be cited for this position (Engle v. Reider, 366 Pa. 411, 77 A.2d 621 (1951)), there are opinions by our former Supreme Court which support a contrary view. Walz v. Public Service Electric & Gas Co., 7 N.J. Misc. 993, 995 (Sup. Ct. 1929); Sommer v. Public Service Corporation, 79 N.J.L. 349, 351 (Sup. Ct. 1910); Lechman v. Hooper, 52 N.J.L. 253, 255 (Sup. Ct. 1890). But cf. Bielecki v. Max Hertz Leather Co., 3 N.J. Misc. 375, 376 (Sup. Ct. 1925) affirmed 102 N.J.L. 432 (E. & A. 1926). In the Walz case the court in sustaining recovery by the plaintiff, an employee of an independent contractor, for injuries which resulted when he came in contact with an uninsulated electric wire on the defendant's premises, pointed out that the "mere fact that a warning by the defendant company was given to the contractor does not, in our judgment, absolve the appellant company from liability." In the Sommer case Justice Trenchard similarly stated that "If the contractor knew the danger, and failed to warn the decedent, he became also a tort-feasor; but that would not relieve the defendant from liability." Cf. Meny v. Carlson, 6 N.J. 82, 98 (1950).
We are satisfied that upon the entire record before us the issue as to whether the defendant was negligent was a factual one for determination by the jury. The defendant knew of the hidden danger and its notification to the contractor was a proper step of caution. Unfortunately, it stopped there and took no further steps. Thus, although it was in possession and control of the premises and must have been aware that the contractor's men were working without masks, rubber gloves or other precautionary devices, it took no action whatever. It posted no signs and gave no instructions *169 to the employees actually working in the plant. When the first evidence of the plaintiff's chrome dermatitis appeared its nurse simply applied calomine lotion without mention of the danger of his continued employment and the need for precautions. And when his condition worsened she still omitted any mention of these items and referred him to Dr. Mears who in turn made no comment thereon. While we recognize the force of the suggestion that notice to a reputable independent contractor ought ordinarily be deemed sufficient, we nonetheless believe that the facts presented in the instant matter were adequate to justify a finding that the defendant had not acted with reasonable prudence in view of the latent danger which was ever present during the plaintiff's employment at the plant. Cf. Puleo v. H.E. Moss & Co., 159 F.2d 842 (2d Cir. 1947) cert. denied 331 U.S. 847, 91 L.Ed. 1857 (1947); Anderson v. Lorentzen, 160 F.2d 173 (2d Cir. 1947). Similarly, the jury could determine that the plaintiff had acted with reasonable care for his own protection. See Restatement, Torts (1934), §§ 463, 466; Prosser, Torts (1941) pp. 385, 393. Although he saw the dust and suffered some effects at an early date, the evidence was sufficient to support a finding that he worked without information or knowledge as to the nature or extent of the hazard. Under the circumstances the issues of contributory negligence and assumption of risk were clearly factual ones. Santamaria v. Lamport & Holt Line, Ltd., supra; Sommer v. Public Service Corporation, supra.
The defendant relies heavily upon Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1942) where recovery from the defendant was denied for the death of the decedent which resulted from his fall through a defective roof which he, as an employee of a roofing concern, was engaged in replacing. The court recognized the general rule that an owner or occupier of lands is under a duty to an employee of an independent contractor to exercise ordinary care to render his premises reasonably safe for the employee's work, but declared an exception where the injury results *170 from the very defect which the employee came upon the land to correct. Cf. Mullin v. Genesee County Electric Light, Power & Gas Co., 202 N.Y. 275, 95 N.E. 689 (1911). If the plaintiff had been knowingly employed in removing the chrome dust because of its dangerous nature and suffered ill effects while so doing, then perhaps the reason underlying the exception in the Broecker case would render it applicable. However, he had nothing to do with the chrome dust and was unaware of its hazard; he was engaged as a steam fitter in the performance of his employer's contract to do plumbing, heating and process piping and his situation may not be differentiated from those presented in the long line of cases where the general rule was applied.
Although we find no error in the court's denial of the defendant's motion for entry of judgment, we do find error in its evidential rulings. Hanclek and Kerr were permitted, above objection, to testify that they had not at the time of their employment received any precautionary instructions and later suffered ill effects. Their employment was not related to that of the plaintiff which apparently began several weeks earlier and, under the pertinent decisions by our courts, their testimony was not material and should not have been admitted; indeed, the plaintiff does not now defend its admission except insofar as it bore on the issue as to whether the defendant had notice of the hazard. Crouse v. Stacy-Trent Co., 110 N.J.L. 124, 128 (E. & A. 1933). But a fair reading of the record discloses that from the inception of the trial the defendant did not dispute that it had notice of the hazard. And since the crucial question of whether the plaintiff had received appropriate instructions at the time of his employment was the subject of considerable and conflicting testimony at the trial, we believe that the testimony by Hanclek and Kerr was prejudicial to the defendant and requires a new trial.
In the light of the foregoing the defendant's final point on appeal which attacks the lower court's denial of certain requests to charge need not be determined. However, we incline *171 towards the view that the charge adequately submitted the factual issues under proper legal instructions and there was no prejudicial error in denying the requests to charge. Cf. Kurkjian v. Wolpin, 5 N.J. Super. 429, 432 (App. Div. 1949).
The judgment entered in the Law Division is reversed with costs to abide the event.